All right, everyone's in. May it please the court. Jonathan Walsh for Appellant Petrobras America Incorporated. The district court in this case made three critical errors when it dismissed Petrobras' claims under RICO and Texas state law at the motion to dismiss stage. First, the district court did not consider Samsung's fraudulent concealment of the bribery scheme it issued. It is undisputed that Samsung concealed this scheme from both Petrobras and Pride, which was Petrobras' counterparty for the drilling services contract at issue. Samsung paid these bribes to ensure that rogue Petrobras officials would approve this agreement with Pride, which was a precondition for a contract between Pride and Samsung for the DS5. And it is undisputed that Samsung hid the bribe amounts in a last-minute price increase for the drill ship and then lied about it when questioned. This was not Samsung's only act of fraudulent concealment. Samsung met alone with the rogue officials, Nestor Severo and Renato Duque. Samsung concealed the bribe amounts under a secret commission agreement, spreading out the payments to shell entities linked to Severo and Duque over several years. This bribery scheme was so complicated that the Samsung executives in Korea asked the Samsung employees who were orchestrating it to diagram it. And we've included that triangle diagram in our brief and in the amended complaints. Samsung officials wrote in the diagram the broker fee included in the ship price, parentheses, only final ship price disclosed to Pride. That was an admission that they planned to deceive both Pride and everyone else about this last-minute price increase, which was the source of the bribe Samsung used to bribe the Petrobras officials. Counsel, the district court seems to have looked to Operation Car Wash. Is that a different scheme altogether than the DS-5 contract? Yes, Your Honor. The district court, this was the second error the district court made. The district court relied on general descriptions of the Operation Car Wash investigation, which was an enormous scandal in Brazil. Watergate pales in comparison to the size of this scandal. The annual report the district court relied upon, the two newspaper articles that are mentioned in the district court's decision, have nothing to do with DS-5. They don't mention Pride or DS-5. The annual report, which includes a $2.5 billion write-off, doesn't include any amount for DS-5. It was only later, in October of 2015, when Petrobras received the plea agreements from Brazil, from the Brazilian prosecutors, that Petrobras knew about the DS-5 bribery scheme. I'm sorry, Judge Engelhardt, go ahead. I was going to ask, so can you pinpoint, focus on the time period when your client becomes aware that it's Mr. Sevarro and Mr. Duque. First of all, can you pinpoint that date? And also, would that not have been, on that date, whatever it is, would that not have been the time when suspicion arises that maybe other matters they're involved in were also corrupted? Sevarro and Duque were charged in Operation Car Wash in late 2014. They both denied involvement in the bribery scandal. The investigation of those two individuals at that time related to two other drill ships and several other construction projects. There was no connection between the DS-5 bribery scheme and Operation Car Wash when Sevarro and Duque were first charged. In fact, Petrobras' counterparty was Pride, not Samson. It's quite different. It's a different contractual relationship than the two drill ship contracts that are mentioned in those newspaper articles. That's why Petrobras does not have any reason to question the DS-5 drilling services agreement, which again is a different type of contract. It's a contract for drilling services, not a contract for the construction of a drill ship. It was only after the audit report that was completed in May 2015, the report of that audit report to prosecutors, and then finally the receipt by Petrobras of the plea agreements from the broker involved and from Sevarro and Duque, where they admitted that they were bribed in connection with DS-5. That's the only point where Petrobras is aware of the DS-5 bribery scheme, which is the scheme that is at issue in this case. October 2015. The district court made an error when it assumed that Petrobras knew or should have known in when these two newspaper articles came out. Again, the articles do not provide sufficient notice of a bribery scheme involving DS-5. There's no mention of Pride. There's no mention of the broker who was involved in the DS-5 contract. There's no reason at that point to believe, as the district court assumed, that the fraud extended to DS-5. Mr. Walsh, are you arguing that the district court improperly took judicial notice of any documents, or only that the district court drew improper inferences from those documents? The latter, Judge Willett. We don't have an issue with the district court taking judicial notice of the articles. We do have an issue with the inferences that the district court made based on those articles. Again, keep in mind that this was at the motion-to-dismiss stage. There had been no discovery at this point. Based on the pleadings, the district court should have weighed the inferences in favor of the plaintiff. The district court did the opposite. It interpreted these newspaper articles, which are outside of the pleadings, in a way that did not support the conclusions the district court reached on constructive notice. Why don't you have a problem with that, with the newspaper articles? You said you don't have a problem with that. We don't have a problem with the fact that the court took your honor the under 201 there there there is a the district court is allowed to take judicial notice of newspaper articles there are cases where that's allowed but but our issues as a fifth circuit i'm not aware of any case i'm sure my my opposing counsel will let us know if he's aware of a case but again it's it's it's not the fact that they took the district court took notice it's the inferences that the district court made on these articles there there was broad there was broad reporting on operation car wash but there was no reporting on this bribery scheme and that's what the district court did wrong it interpreted these articles which had to do with different crimes different criminals um with respect to to the annual report at least and made inferences against our client inferences that are not supported by those by the district court if i can continue the third critical mistake that the district court made was misapplying the accrual rule here separate accrual rule again the the notice period for purposes of the statute of limitations begins when the plaintiff is aware of or should be aware of his or her injury here the district court at page six of the decision found that petrobras knew or should have known of bribery and corruption the district court did not do the analysis to determine when did petrobras know or when did when should petrobras should have known that it was injured as a result of this fraudulent contract there was no such is the question whether a plaintiff should have known of an injury is that question ever susceptible to resolution at this early motion to dismiss stage rarely your honor the cases we've cited in the briefs and the cases um regarding uh this issue typically come up in the summary judgment context very few cases are decided at this early pleading stage typically the courts asked has the plaintiff pleaded himself out of the statute of limitations and we have not done that we've we've pled the opposite we've pled that we we were not petrobras was not aware of this fraud and should not have been aware of this fraud until it received the based on what was pled again which would should have been viewed in favor of the plaintiff here there there is not a sufficient basis to dismiss at this very early stage the rico and state law claims finally i'll go on to some of the arguments that samson has made in its brief which i think the district court disregarded and i think this court can disregard as well samson has led its brief by should be imputed here we do not think that is appropriate because we have a we have adequately alleged the adverse agent doctrine which finds that if the officials acted solely in their interest the knowledge of those officials cannot be imputed to the plaintiff here we have alleged that severo and duque were bribed and benefited by hundreds by by millions of dollars only for their own benefit they were not acting for the benefit of of petrobras in fact their actions saddled petrobras with hundreds of millions of dollars of losses for this agreement the the imputation document is not appropriate here counsel could you address love versus national medical enterprises because it's my understanding that you said that petrobras needed to know who but under that case you just need to know um that there isn't rico injury not who caused it well love is is somewhat different than the facts of this case your honor that the love case involved uh medical fraud there were allegations that the defendant had overcharged um blue cross blue shield and again it was a fraudulent concealment case and the case um actually ended up not applying the statute of limitations based on that fraudulent concealment but there was much easier to determine who the uh proper defendant was it was obviously the hospital and hospital people that were overcharging for these plaintiffs that's not the fact pattern here here we have a triangular relationship petrobras is directly contracting with pride and unbeknownst to petrobras samson is bribing um officials at petrobras to to approve separate contract with pride there was an arbitration between pride and samson on this issue and the arbitration tribunal concluded that pride was not aware of the fraud so so here if petrobras had sought to bring a claim when the cut when the drill ship was first take taken on standby it wouldn't have been appropriate to bring the claim against pride because pride was not involved in the fraud sam samson was directly involved in the fraud and petrobras only became aware of that when it received these plea agreements from brazil the other argument that samson makes in its brief is that petrobras should have known of the uh the injury back when it signed the contract which is inappropriate again based on the allegations of the complaint there were lower level employees at petrobras who questioned the need for a third drill ship but these employees worked for severo severo was the head of the division that approved this contract based on the analysis that severo and others were looking at there was a need for a third drill ship there were very optimistic assumptions made about the need for drill ships in 2000 and 2008 that ultimately did not come into fruition there were assumptions based on the blocks that petrobras had obtained through purchase in angola and other locations outside of brazil that they would need three drill ships based on the information that was available at the time of the contract there was no reason for petrobras to believe that the contract had been procured through fraud which goes back to my first remarks regarding the concealment the difference between this case and some of the cases that are cited by samson is that samson concealed its fraud it hid the bribe payments from pride it hit the bribe payments from petrobras it created this triangular relationship where wherein pride effectively camouflaged any any role that samson would have had in the negotiations there was no reason for petrobras to believe that this contract when it was signed in 2008 was the product of fraud and if if anyone at petrobras did know that anyone other than severo and duque petrobras certainly wouldn't have entered the contract finally the if there are any questions your honor i'm happy to address them now i don't think so i was going to ask if you had anything further but it sounds like you do so well i just want to make one more comment regarding your question about whether you need to know both who both the injury and who caused it i think it's important here uh to look at why that's an important important i believe important holding for motel it is impossible for petrobras to bring a claim unless it knows who the proper defendant is if you look at the texas v allen construction case that's a a very good example where you need to know who are the people that are actually involved in the rico activity who are the rico defendants in order to bring the action it would be inappropriate for petrobras to bring the action until it knows that samson is the source of the bribes samson has argued in its brief that petrobras should have brought this action based on what it knew before october 2015 there simply was not enough evidence that samson was involved in this rico activity for petrobras to do that the only counterparty that petrobras believed was involved in this drilling services agreement the only party that they had direct negotiations with was pride and again pride was not involved in the fraud mr walsh quick question that's admittedly kind of peripheral um can you explain to me why you and opposing counsel at both uh both sought to seal so many documents and your briefing in this case yes your honor i'm happy to raise that uh we approached opposing counsel about whether they would seek to seal the documents uh here in the in in this hearing and whether they wanted to have a closed courtroom we obviously wanted to cite the documents they're very helpful uh they include the triangular diagram that i mentioned earlier they include emails where samson officials are talking about the um the crimes that they are committing that were not acts that were not accessible to petrobras our view these are not trade secrets these are not proprietary information i think the court correctly found that the court should not be sealed for should not be closed for this proceeding um it is important for the public to know that samson was not only involved in the bribery scheme but that it concealed its bribery scheme from petrobras and others um so we we took the position really that these documents were were not appropriate for for um closing the courtroom however in an abundance of caution we made that motion to make sure that we could cite the documents here and here at the oral argument i thought it was true that both parties independently submitted motions seeking to file their briefs and some supporting documents under seal is that true well we we cooperated with with samson's counsel to to do that there is an nda in place between uh samson and petrobras that requires us to make best efforts to keep these documents confidential um in the in the spirit of that nda we we cooperated but obviously it's a big difference between filing the documents under seal and not being able to make the arguments to uh the panel based on the documents you you have those documents and they're accessible to you um we wanted the nda was simply an agreed stipulated arrangement between the parties correct in connection with the arbitrations that i mentioned earlier that's how petrobras received the documents and the district court sealed them originally as part of the nda the district i see my time is up but i'll answer that yes your honor the district court did seal based on the nda and the court was closed for the arguments that the motion dismissed okay um i think we have your argument you said time for it did your honor thank you counsel you may proceed thank you your honor and may it please the court my name is david wiener i'm counsel for the appellee samsung heavy industries the district court was exactly right in concluding that petrobras bought its ricoh and texas fraud claims outside the four-year limitations and that it knew or should have known about its injury the purported lack of need for ds5 beginning at least in 2014 in a nutshell by the end i didn't know it until 2014 i apologize your honor did not hear the beginning of your question why why should uh petrobras have known in 2014 there are essentially a couple of pieces of your honor there's this question of the lack of need for the drill ship in 2007 and 2008 when ds5 was being negotiated there were employees inside of petrobras who questioned the need for ds5 and said we don't think it's necessary because we have these two other drill ships in 2011 they received ds5 and it becomes operational at that time your honor they have essentially nothing to do with ds5 they have no need for it but isn't aren't there other reasons commercial reasons why that might have been the case i think there's some reference to uh deepwater horizon and things going on in the market at the time why would that be a flashing red light it's it's a matter of inquiry notice your honor you put together these these pieces of information when you buy a more than half billion dollar piece of infrastructure and you receive it and you have nothing to do with it it suggests maybe you need to ask some questions but your honor there's more than that still so you have this this massive contract that you have paid for that you have nothing to do with it so you have to sublease it out multiple times over ensuing years then we get to 2014 in uh the 20th report that petrobras files with the sec it reveals that in october 2014 it has learned that as a result of the operation car wash investigation that the scheme and this was a broad ranging scheme throughout brazil's uh political class businesses all throughout uh brazilian commerce and they learn that petrobras is specifically tied to operation car wash and that contractors and suppliers to petrobras were involved in that scheme and overcharging it to more the tune of more than two and a half billion dollars and they learn that cerbero the individual responsible for approving international contracts including drill ships is involved in this scheme and duke duque the individual who was i think his title was the chief of services who also was involved in the drill ship process so now they know that these the person who was responsible for drill ships is entangled in this fraudulent scheme they have this drill ship on their hands that for years they haven't had work for it and so they've been subleasing it out but then there's still more errors because by the end of the year it is known that cerbero is arrested not just in connection with operation car wash he's not just arrested in connection with bribery related to the first two drill ships delivered by shi but it's also known that the arrest is precisely because of taking bribes from shi why why does the imposition of pride as a contracting party why does that that not insulate petrobras at this point at the point you're talking about so for a couple of reasons your honor the first reason is i think as judge rosenthal pointed out in her decision at this point in time petrobras knows that the person who was responsible for these contracts with uh with with uh for the drill ships cerbero he's been taking bribes so you would think that petrobras would would think to itself well what other drill ships has this individual been involved with and they look and see there's not many there's one other one it's ds5 and they look and they can see that that drill ship has had no work for years since it was delivered and in fact your honor when petrobras finally gets around to looking at their own files and investigating all of these drill ships what do they find they the evidence could not be more damning from pet for petrobras they find that the ds5 agreement is commercially terrible for petrobras it has over a hundred million dollars in overcharges in it including a bonus that is completely out of market uh market rates they find in their own files that in connection with ds5 that the same people who were involved in this bribery scheme for the first two drill ships are all meeting together in connection with ds5 cerbero is there the broker that um that shi used for the first two drill ships and is and is alleged to have been involved and was involved in the ds5 scheme he's also meeting with them and prides broker padilla the other individual he's also in these meetings now how is this in the 12 v6 realm because your honor petrobras elected to include this information um they included they attached this audit report to their amended complaint and they actually included most of these allegations in the complaint itself so that's why it is appropriate to take all of this information into account in assessing whether or not the limitations period have run okay so was the but the scc filing is that in there it uh so that that's one minute complaint sorry i was i missed your question your honor i apologize was the scc filing in the amended complaint your honor the 20 f was not part of the amended complaint but it was a document the judge rosenthal took judicial notice of and um petrobras did not object to that um to answer the question your honor that you asked before about taking judicial notice of documents in connection with 12 v6 we actually cited at least one example from this court in our motion to dismiss it's norris versus hearst and it's 500 f third 454 and the footnote nine and what were those documents sorry your honor what were those documents in that case in the hearst case i think they were newspaper articles okay but the under federal rule of evidence 201 we're only supposed to take judicial notice of things whose sources whose accuracy cannot reasonably be questioned are we saying that newspaper articles accuracy cannot reasonably be questioned no i'm not trying to cast aspersions on any particular news companies or anything like that i'm just asking why isn't that not the case for newspaper articles and your honor i apologize miss misspoke norris um was a case that involved records from other judicial proceedings i didn't i don't think we have ever taken judicial notice of newspaper articles so i i don't know specifically about judicial notice but there are numerous cases from this court in the statute of limitations context that specifically talks about the knowledge of widely known pieces of information and that that should be that can and is appropriate to use for purposes of determining the statute of limitations the beef industry's antitrust case um and in fact in advocacy in summary judgment not in 12b those are at the summary judgment stages this is 12b and so it's adding things into the case that can't be that are not being cross-examined and do you i mean you agree that a newspaper article or tweet from a newspaper or something like that can as an accuracy that can be reasonably questioned don't you um there certainly are instances where you could question but when you're talking about a widely reported piece of information that in this case petrobras doesn't dispute that servo was arrested at the end of 2014 in connection with taking bribes for the first two drill ships from shi um i would also direct this court one of the cases that we cited a rico case decided at the 12b6 stage laporte versus bayshore national bank and that was a case where the district court granted a motion to dismiss on statute of limitations grounds and the the reasons that the court found that the statute of limitations had run is because the defendants in that case their two executives had been previously convicted for embezzling from other bank accounts not belonging to the plaintiffs and what this court said is that it was appropriate to take that into account in finding that the the limitations period had accrued that plus the information that um that the plaintiff in that case could have gleaned from looking at their own bank records and communications with the bank so that's i think no different from the situation here where judge rosenthal took judicial notice of these widely reported events including their own files and including the arrest of an employee an executive of petrobras that petrobras doesn't dispute they don't claim that it was wrong to take that into account their argument as as counsel indicated in response to one of the court's was only what inferences are appropriate to draw from that piece of information and i think what the laporte case signals is that when you're in a situation where you have been alerted to the existence of fraud even if it doesn't directly implicate you you are on notice and you have to couldn't have taken a year or to go through all the paperwork and research especially if the person's trying to conceal the information i'm just how long do you have reasonably so your honor this court and the texas supreme court has never extended a grace period in situations where the knowledge of the or the information about the scheme is sitting in the plaintiff's own files how long do you have reasonably to go through the paperwork and figure it out because it's complicated it's not a smoking gun paper probably we don't know whether it is or not frankly that could be summary judgment evidence um so we can't assume that it's readily available by just one the first document in their file so how does that work well again your honor i think this court as i said has not uh has not considered that there is any sort of grace period when you have access to the information and i think the best example of that is again one of the cases we cited martina's tapia uh versus chase manhattan bank and that was i'm not talking about a grace period i'm talking about when is it reasonable to discover is it that very day or not right well so i think the teaching of that case your honor is that when it's when it's information in your own possession you have constructive knowledge of it from the outset okay is it your position that are you imputing the knowledge of the people who were participating in the bribery as part of this at all we have raised that as an alternative ground but the court doesn't need to reach that just as judge rosenthal didn't reach that in order to affirm her decision um the imputation you wouldn't ask you would have the burden of establishing your that that defense the imputation yes and how could you do that on this record i mean is that really a viable argument that you have uh so your honor in this court's um when they act their conduct is is imputed to the company unless the adverse agent doc agency doctrine applies and that's typically pled that and so you would have to overcome that just with no evidence i mean unless something was judicially noticed or something and again your honor the court doesn't need to reach that that and that and judge rosenthal didn't reach that issue um and so it's not necessary for the court to address that in order to conclude that the limitations had run on do you want to argue that or do you agree that that's not a viable argument i mean we think that there is sufficient information in in the complaint and in the record to support imputation um petrobras when it signed a uh uh an agreement with the department of justice it specifically agreed that it was responsible for the knowledge and conduct of its executives and that it wouldn't challenge that in future proceedings and so i think on the basis of that agreement with the department of justice along with what else is in the amended complaint then i think we absolutely do satisfy the test for imputation um clearly the i think the stronger argument though is simply that they had more than enough information to know that they had been injured their argument in the district court was not that they needed to know about any fraud it was not that they needed to know about samsung's involvement their argument in the district court was that the only thing that started accrual on their and fraud claims was knowing that they had no need for ds5 and they purportedly only reached that conclusion by executing this audit report in 2015 but the audit was entirely inward looking it was based on their own sources of information and this court has never held in the limitations context nor has the texas supreme court that when you have access to this information you're on notice of a possible injury as they were for years because they knew that ds5 didn't have work they had nothing for it to do and so you would think either in 2007 and 2008 when their first contracting somebody this this agreement was presented to the executive board and you would think somebody would ask about it you would think they would ask about what happened with the or over the ensuing years and instead they waited until 2015 and what their argument really boils down to is that a rico and fraud plaintiff can effectively choose for themselves when they want the limitations period to run simply by when they decide to open up their own files and look and see and decide for themselves whether they've been injured and this cases this court's cases the court uh and the texas supreme court cases don't support that proposition at all to the contrary the u.s supreme court in all of its rico statute of limitations decisions has repeatedly emphasized the importance of rico plaintiffs acting diligently and trying to determine whether or not they have an injury this gets to your the question i think judge all right that you asked the about love and you need to know the identity of who is the perpetrator and rotella versus wood the supreme court's decision certainly doesn't support that this court's decisions certainly don't support that and numerous other circuits that have looked at this exact same argument we cited a couple of them the first circuit and the alvarez decision the 10th circuit in the robert crone line trust those courts have all held that there is no requirement to identify the who in in order for the limitations to accrue this the accrual doesn't mean that you have to file a lawsuit on that date all that it means is that the window for bringing suit for investigating to determine whether or not you have a claim has opened and at that point you have to act diligently you have to investigate and if you have have a claim if you have an injury that you've discovered then it's your responsibility to bring suit within the limitations period so i think the the notion and the argument that we couldn't know who to sue that that does not stop the accrual from happening the accrual begins when you determine that you have an injury or you should have determined that you had an injury and here petrobras was went to great lengths in the district court to say that their injury was just the determination that they had no need for ds5 that is a purely subjective determination that they could have reached at any point in time and allowing them to pick and choose when the injury occurred or when they identify the injury based purely on when they started their audit and finished their audit would turn this court's cases the u.s supreme court's cases and the texas supreme court cases regarding limitations on their head for these reasons your honors if there are no further questions as we as we indicated we think judge rosenthal got this exactly right that petrobras had more than enough information to know about its injury and to take action it failed to do so and the limitations period on its claims has run thank you your honor thank you mr walsh you've saved time for rebuttal sir thank you your honor just to go back to this point on injury i think it's important when you look at the cases regarding when a plaintiff knows or should know of his injury the focus is on the injury under rico and if you look at the language of rico the claim is based on an injury by reason of a violation of rico petrobras could not know that it had an injury based on a violation of rico based on what was in its files the files did show that there was some questioning about whether the drill ship was needed that was as of 2007 2008 i also want to correct what counsel said about whether the drill ship was actually busy when it first was put on put on operation it was it started as an operating drill ship it only later was assigned twice when the work slowed down and judge engelhardt mentioned some of the reasons global issues that could have been the factors for such a slowdown there was a moratorium in the gulf of mexico due to deepwater horizon uh incident there was a slowdown in the in the in the exploration and development of of oil across the world based on the slowdown after 2008 the audit report which counsel mentioned multiple times does not identify issues that were existing at the time of contracting it identifies issues that came into fruition over the course of four years when this drill ship was in operations and if you read the audit report yes five i want to reference something your opponent said a few minutes ago was ds5 one of only three vessels that mr uh savara and duque were involved with no your honor as head of the international division several would have been responsible for many different drill ships in many different areas we've mentioned in our brief that the at the time petrobras which has a number of different subsidiary had over 203 drill ships under contract during this time period so again our focus was when the drill ship went on standby the reasons it went on standby as are set forth in the audit report was based on a global oil industry slowdown and the investigation into um this drill ship and the other drill ships in the audit report was based on commercial reasons and mr uh weinstein said that this was a commercially terrible agreement we don't disagree with that but that's not a basis to bring a rico claim we could not have brought petrobras could not have brought a rico claim against pride based on a commercially terrible contract it was only when petrobras identified in the plea agreements that this was a fraudulently procured contract not a commercially terrible one a fraudulently procured contract i want to go back to the newspaper uh point judge elrod that you mentioned the case that council mentioned abacus actually explains why newspaper reports are not reliable sources for determinations of constructive notice in that case judge rosenthal who was the district court judge who decided it on summary judgment concluded that the newspaper articles about the oil for food program were not sufficiently detailed such the plaintiffs could know that they had a claim against these defendants similarly here there's no dispute that severo and duque were charged but the new i think your time is up sir thank you your honor again we asked the lower courts decision thank you we appreciate both council's arguments today and we appreciate you appearing virtually so we could have this argument and um this case is submitted thank you